T.C. Memo. 2011-151

UNITED STATES TAX COURT

DAVID S. AND MELANIE S. ALIOTO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11312-09.                    Filed June 29, 2011.

<u>W. Michael Conway</u>, for petitioners.

<u>Terry Serena</u>, for respondent.

MEMORANDUM OPINION

GOEKE, <u>Judge</u>:  In this deficiency case, David and Melanie
Alioto seek review of respondent's determination to deny
deductions for business losses and theft losses for tax years
2005, 2006, and 2007 (the years in issue).  As discussed below,
we sustain respondent's determination to deny deductions but hold

that petitioners are not liable for the accuracy-related penalties under section 6662(a).[1]

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing the petition, petitioners resided in Ohio. David S. Alioto (Mr. Alioto) has been in the transportation and logistics industries for over 20 years, including founding and developing his own company from 1995 to 2000. Mr. Alioto was COO of this entity, known as Nation Street, which was formed in 1995. Nation Street was engaged in the business of transporting unusual items that other common carriers would generally not transport.

Mr. Alioto conducted a convention for his business in early 2000 in Boston, Massachusetts, at which time he invited actor John Ratzenberger (Mr. Ratzenberger) to speak to the attendees. Mr. Ratzenberger played Cliff Claven, the mailman, on the television show "Cheers". While Mr. Alioto was having dinner with Mr. Ratzenberger and his agent, they discussed a new business venture. The business concept was to use celebrities, such as Mr. Ratzenberger, and create media which would then be sold to corporations to advertise on the Internet. Mr. Alioto

---

[1]All section references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

testified that a business plan named Big Rent Tent (BRT) was developed, which included multiple celebrities.

Mr. Alioto became CEO of BRT around September 2000. Mr. Alioto and Mr. Ratzenberger discussed transferring a 10-percent ownership interest in BRT to Mr. Alioto for his services as CEO, but this was never finalized. Dave McNeff (Mr. McNeff) was an associate of BRT. In 2000 or 2001 Mr. McNeff owed Mr. Alioto $40,000 which Mr. Alioto testified he forgave at the behest of Mr. Ratzenberger as consideration for Mr. McNeff's terminating his association with BRT.[2]

The underlying issue in this case is the deductibility of alleged business or theft losses claimed as the result of a debt Mr. Alioto claims he was owed by Mr. Ratzenberger.

On or about November 20, 2000, Mr. Alioto received a reimbursement of $35,081 for amounts he had expended in 2000 on behalf of BRT. On or about July 16, 2001, Mr. Alioto received a reimbursement of $52,875.96 for amounts he had expended in 2000 and 2001 on behalf of BRT. Mr. Alioto testified that he made payments or incurred expenses totaling $103,150 on behalf of BRT and that he also incurred debts for additional

---

[2]Petitioners' theft loss deduction of $19,000 from their 2005 income represented a portion of Mr. Alioto's forgiveness of the $40,000 debt which Mr. McNeff owed to Mr. Alioto. Mr. Alioto deducted an additional $18,500 in tax year 2008 on account of his forgiveness of Mr. McNeff's $40,000 debt in 2000 or 2001.

operating expenses on behalf of BRT.[3]  Around mid-2001 Mr. Alioto decided to remove himself from BRT completely.[4]

In February 2002 Mr. Alioto obtained legal advice concerning the possibility of claims against Mr. Ratzenberger or BRT to collect the amounts he believed were due him.  Mr. Alioto did not commence legal action or attempt to collect any amounts.   On October 14, 2005, Mr. Alioto commenced a voluntary chapter 7 bankruptcy proceeding before the U.S. Bankruptcy Court for the Southern District of Ohio, Western Division (Dayton).  The first meeting of creditors in the bankruptcy case was held on February 22, 2006.

Mr. Alioto's chapter 7 case was identified as a "no asset" chapter 7 proceeding.  Creditors were directed not to file proofs of claim unless notified to do so.  On May 1, 2006, the chapter 7 trustee in the bankruptcy case filed a "Report of No Distribution".  Mr. Alioto received a chapter 7 discharge in his bankruptcy case on February 27, 2007.

Mr. Alioto scheduled his claims against BRT and Mr. Ratzenberger in his 2005 chapter 7 bankruptcy case as an item of personal property with a "current market value" of $341,363.

---

[3]Mr. Alioto deducted the $35,081 and the $52,875.96 before arriving at his total claim of $103,150.

[4]There was no written contract, promissory note, or other formal agreement between Mr. Alioto and Mr. Ratzenberger or BRT for the reimbursement of amounts which Mr. Alioto spent during his association with the enterprise.

This asset was identified as "Outstanding business expenses and shareholder loans from [sic] Big Red Tent, contact person John Ratzenberger."  The chapter 7 trustee did not pursue Mr. Alioto's claim against BRT or Mr. Ratzenberger and closed the bankruptcy case on May 3, 2006.

On or before April 15, 2006, petitioners timely filed their joint Federal income tax return for 2005 in which they deducted $19,000 and $1,507 on their Schedule C, Profit or Loss From Business, as business losses.[5]  On or before April 15, 2007 and 2008, Mr. Alioto separately and timely filed his individual Federal income tax returns for years 2006 and 2007 in which he deducted $3,060 in 2006 and $40,520 and $4,188 in 2007 on his Schedules C as business losses.[6]  The losses deducted in 2006 and 2007 were carried forward as the unused portion of the $103,150 loss incurred in 2000 and 2001.

On February 12, 2009, respondent issued a notice of deficiency to petitioners setting forth respondent's determination that petitioners have a deficiency for 2005 of $18,391 and owe a penalty under section 6662(a) of $3,678.20.  On

---

[5]Mr. Alioto treated some expenditures on behalf of BRT during tax years 2000 and 2001 as unreimbursed employee business expenses for which he claimed deductions in those years or possibly for taxable years 2003 and 2004.

[6]Mr. Alioto deducted the amounts at issue on Schedules C for an entity known as Probity Enterprises.  Probity Enterprises was formed in taxable year 2001.

February 12, 2009, respondent issued a notice of deficiency to Mr. Alioto setting forth respondent's determination that Mr. Alioto owes deficiencies in income tax for 2006 and 2007 of $10,103 and $44,754, respectively, and section 6662(a) penalties of $2,020.60 and $8,950.80, respectively.

On May 12, 2009, petitioners timely filed a petition with this Court.

## Discussion

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden of proving that those determinations are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In some cases the burden of proof with respect to relevant factual issues may shift to the Commissioner under section 7491(a). Petitioners did not argue or present sufficient evidence that they satisfied the requirements of section 7491(a). Therefore, the burden of proof does not shift to respondent.

Petitioners argue that they should be able to deduct, as business losses or theft losses for tax years 2005, 2006, and 2007, amounts which were lost in tax years 2000 and 2001 from Mr. Alioto's involvement in BRT.

## 1. Business Losses

Section 165(a) allows a deduction for any loss sustained during the taxable year that is not compensated for by insurance

or otherwise. Section 165(c) limits the loss deduction for individuals to losses incurred in a trade or business, losses incurred in a transaction entered into for profit though not connected with a trade or business, and certain other losses including those arising from a casualty or theft.

Mr. Alioto alleges that in 2000 and 2001 while acting as CEO of BRT, he advanced a total of $103,150 to BRT. Mr. Alioto asserts that because he was the CEO of BRT, all losses that occurred should be deducted by him as losses of his business. Additionally, he claims that the losses did not become uncollectible until 2005 when Mr. Ratzenberger's agent emailed Mr. Alioto telling him that the amount would not be paid back. According to Mr. Alioto, it was only after this email that he realized he would not get paid back, and thus he should be allowed a business loss for that amount in 2005. Respondent argues that Mr. Alioto incurred the loss before 2005, and thus no business expense loss should be allowed for taxable years 2005, 2006, and 2007.

During trial, Mr. Alioto admitted he had disassociated himself from BRT in July 2001. He also testified he had become aware of material misrepresentations regarding the financial backing of the enterprise during a meeting with BRT's board of advisers in the spring of 2001. According to Mr. Alioto, it was then that he learned that the advisers were not committed to

making any financial contributions to or on behalf of BRT.  Mr. Alioto testified that he realized he was not going to recover his expenditures at "sometime in 2004 or 2005."  Mr. Alioto also testified that he had received an email from Mr. Ratzenberger's financial manager in 2005 which stated that the amounts would not be repaid to Mr. Alioto.  On the basis of this alleged email Mr. Alioto determined the debt uncollectible.  However, a copy of this email could not be produced at trial, and Mr. Alioto did not otherwise establish the alleged communication.

Section 1.165-1(d)(2)(I), Income Tax Regs., provides in pertinent part:  "When a taxpayer claims that the taxable year in which a loss is sustained is fixed by his abandonment of the claim for reimbursement, he must be able to produce objective evidence of his having abandoned the claim, such as the execution of a release."  There is no objective evidence that Mr. Alioto abandoned the claim against BRT during 2005.  Outside of an email that Mr. Alioto claimed he received from Mr. Ratzenburger's agent which could not be reproduced and provided at trial, all evidence shows that Mr. Alioto was told of BRT's financial issues in 2001 and 2002.  It is clear that at the end of 2001 and early 2002 Mr. Alioto understood that the expenses would not be paid back.  The record does not support a finding that Mr. Alioto sustained an abandonment loss during 2005.  Accordingly, the Court sustains respondent's determination that petitioners are not entitled to

business loss deductions claimed by Mr. Alioto for tax years 2005, 2006, and 2007.[7]

## 2. Theft Losses

In order to claim a theft loss deduction, the taxpayer must prove:  (1) That a theft actually occurred under the law of the jurisdiction wherein the alleged loss occurred, Monteleone v. Commissioner, 34 T.C. 688, 692 (1960); (2) the amount of the loss, Gerstell v. Commissioner, 46 T.C. 161, 175 (1966); and (3) the date the taxpayer discovered the loss, sec. 165(e); McKinley v. Commissioner, 34 T.C. 59, 63 (1960); see also River City Ranches #1 Ltd. v. Commissioner, T.C. Memo. 2003-150, affd. in part, revd. in part on another issue and remanded 401 F.3d 1136 (9th Cir. 2005); Yates v. Commissioner, T.C. Memo. 1988-565.

In determining the jurisdiction in which the loss occurred, petitioners and respondent agree that Massachusetts is the logical jurisdiction.  In Massachusetts, theft is defined as follows:

---

[7]Petitioners also argue that because none of the claimed losses were reimbursed by debts discharged in their ch. 7 bankruptcy, the losses could be used as business losses.  Mr. Alioto testified that every scheduled debt, except for a student loan and one-half of a debt to, presumably, a law firm, arose from his expenditures on behalf of BRT.  These debts were scheduled as unsecured, nonpriority claims.  Mr. Alioto received a ch. 7 discharge on Feb. 27, 2007, of all the remaining debt, except for the student loan, incurred as a result of his involvement with BRT.  Therefore, even if we were to assume that business losses were allowed, there was nothing for petitioners to deduct for tax years 2005, 2006, and 2007.

Sec. 34. False Pretences to Constitute Larceny.

       Whoever, with intent to defraud and by a false pretence, induces another to part with property of any kind or with any of the benefits described in * * * [the preceding sections] shall be guilty of larceny. [Mass. Ann. Laws ch. 266, sec. 34 (Lexis Nexis 2010).]

Massachusetts law thus requires Mr. Alioto to show proof that Mr. Ratzenberger committed acts of larceny or fraud specifically intended to steal from Mr. Alioto or to defraud him by false pretenses when BRT was established in 2000 and 2001. There is nothing in the record that would prove that Mr. Ratzenberger committed any wrongdoing. Mr. Alioto did not present any evidence demonstrating that Mr. Ratzenberger or his agents did anything illegal and failed to show any specific promises or agreements made by Mr. Ratzenberger and his agents. Mr. Alioto never contacted the police, the Securities and Exchange Commission, or any State licensing division, never filed suit against Mr. Ratzenberger, and never had any written contract between himself and Mr. Ratzenberger. At trial Mr. Alioto claimed that a formal agreement did exist between himself and Mr. Ratzenberger but that he had left it at home and did not want to share it with anyone. Consequently, we hold that petitioners are not entitled to their claimed $103,150 loss incurred in 2000 and 2001.

3. <u>Penalties</u>

Respondent also determined that Mr. Alioto is liable under section 6662(a) for accuracy-related penalties for tax years 2005, 2006, and 2007. Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the underpayment to which section 6662 applies. Section 6662 applies to the portion of an underpayment of tax which is attributable to, among other things, (1) negligence or intentional disregard of rules or regulations, (2) a substantial understatement of income tax, or (3) a substantial valuation misstatement. See sec. 6662(b)(1)-(3). Section 6662(c) defines "negligence" as "any careless, reckless, or intentional disregard". See also <u>Hansen v. Commissioner</u>, 820 F.2d 1464, 1469 (9th Cir. 1987) ("Intentional disregard occurs when a taxpayer who knows or should know of a rule or regulation chooses to ignore the requirements.").

Section 6664(c)(1) provides that the accuracy-related penalty shall not be imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause for that portion and the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case

basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

We believe that Mr. Alioto did in fact make a good faith effort on the basis of his knowledge of the facts and understanding of the law. Mr. Alioto is not a tax expert, nor has he any background in tax law. Respondent does not dispute that Mr. Alioto incurred $103,150 of expenses. Neither does respondent dispute that Mr. Alioto was involved in a complicated business transaction. Mr. Alioto sincerely believed he was shorted $103,150 in this business transaction, and he genuinely believed he was entitled to some income tax relief. Thus, given these difficult circumstances, we find that the claims of losses were made with reasonable cause and in good faith. Accordingly, we do not sustain respondent's imposition of accuracy-related penalties for tax years 2005, 2006, and 2007.

To reflect the foregoing,

<u>Decision will be entered for respondent as to the deficiencies in income tax and for petitioners as to the penalties</u>.