T.C. Memo. 2015-25

UNITED STATES TAX COURT

TIM SHERIDAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7371-13.                    Filed February 18, 2015.

Tim Sheridan, pro se.

<u>Kirsten E. Brimer</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  With respect to petitioner's Federal income tax for 2009,

2010, and 2011, the Internal Revenue Service (IRS or respondent) determined

[*2] deficiencies and accuracy-related penalties under section 6662(a)[1] in the following amounts:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2009 | $15,661 | $3,132 |
| 2010 | 12,630 | 2,526 |
| 2011 | 7,682 | 1,536 |

For each year at issue petitioner claimed a deduction of $1 million under section 165(e) for a "loss arising from theft." He contends that these theft losses occurred when "pirates" stole the intellectual property underlying a patent that he holds. Respondent disallowed these deductions because there was no evidence that patent infringement had occurred or that petitioner had incurred actual damages. Respondent has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that he is entitled to judgment as a matter of law. We agree and accordingly will grant the motion.

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code) in effect for the tax years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*3]                              Background

Petitioner is an inventor and an entrepreneur. He is the holder of U.S. patent No. 7,415,982, filed in 2001, for a "smokeless tobacco vaporizer." Certain other patents, which also involve a mechanism for heating materials so that they can be vaporized and inhaled through a tube, predate petitioner's patent. His patent, like those other patents, precedes by almost a decade the recent rise to popularity of "e-cigarettes."

Following a long period of disappointing sales, petitioner began to view each roadblock in his vaporizer's path to success as evidence of multiple conspiracies to prevent him from enjoying the fruits of his labor. He alleges (among other things) that Internet search engines have intentionally demoted his product; that social media platforms have conspired to diminish his product's visibility; that the U.S. Postal Service has intentionally misspelled the name of his business; that a telecommunications firm has prevented him from sending crucial emails; that his computer has been continuously hacked to prevent him from retrieving important information; and that Wikipedia has improperly removed edits he sought to make to an Internet article discussing vaporizers. He contends that these perceived wrongs have enabled other companies to use his intellectual property and make vaporizer sales that his business would otherwise have made.

**[*4]**   Petitioner contends that these conspiracies have resulted in "thefts" that have caused him losses ranging from $282 million to $294 million annually.  In calculating these losses, petitioner begins with his estimate of the total market for vaporizers worldwide, which he believes to be $1.8 billion.  From this figure, he derives his damages by applying various formulas of his own creation, which apply estimates and randomly assigned multipliers to geographic populations, Internet traffic, total market, competitors' sales, and other items.  Inputs to these formulas include petitioner's estimates of smokers as a percentage of the population, smokers who use "alternative" smoking devices, smokers who "actually quit" annually, smokers who "virtually quit" annually and use replacements, annual sales of vaporizers to customers "lured away" by alleged market persecution of his product, and Internet traffic lost to his business because of "inappropriate throttling" of online search results.

In 2013 petitioner filed suit in the U.S. District Court for the Eastern District of Pennsylvania seeking to enjoin IRS actions against him, to obtain a judicial "acknowledgment" of the losses he had calculated, and to compel the IRS to return to him, as damages, taxes that alleged patent infringers had paid on their ill-gotten gains.  The District Court granted the United States' motion to dismiss the case under section 7421(a), which prohibits taxpayers from bringing suit "for the

**[\*5]** purpose of restraining the assessment or collection of any tax." See Sheridan v. United States, 2013 WL 2419167, at \*2 (E.D. Pa. 2013) (quoting Anti-Injunction Act, 26 U.S.C. sec 7421(a)), aff'd, 553 Fed. Appx. 187 (3d Cir. 2014). Petitioner appealed that dismissal to the U.S. Court of Appeals for the Third Circuit, which affirmed the District Court's ruling. See Sheridan, 553 Fed. Appx. 187. The Court of Appeals termed "nonsensical" petitioner's claim that he was entitled to a refund of $20 billion on account of losses he had suffered over the life of his patent.

Petitioner filed Federal income tax returns for 2009, 2010, and 2011 that included respective Schedules C, Profit and Loss From Business. On each Schedule C, petitioner claimed a deduction of $1 million for "Other Expenses." During the IRS examination of these returns, he attempted to justify these deductions as "theft losses," asserting that he had claimed "a small amount of loss to prevent further victimization."

The IRS disallowed the claimed theft loss deductions, made other minor adjustments to his returns,[2] and timely mailed petitioner a notice of deficiency. He

---

[2]Respondent determined that petitioner had additional income of $185 in 2010 from ordinary dividends and royalties, determined that petitioner had additional Schedule C gross receipts of $1,861 for 2011, and made certain computational adjustments. Petitioner does not dispute these adjustments.

**[\*6]** timely sought review in this Court, residing in Pennsylvania at the time of his petition.  Respondent filed a motion for summary judgment on August 5, 2014, to which petitioner responded on September 11, 2014.  In his petition and in his response to the motion, petitioner addressed only the disallowance of his claimed theft loss deductions.  All other adjustments set forth in the notice of deficiency are thus deemed conceded.  See Rules 34(b)(4), 121(d).

## Discussion

A.    Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  Under Rule 121(b) the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.  Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  Rule 121(d) provides that where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but rather must set forth specific facts, by affidavits or otherwise, "showing that there is a genuine dispute for trial."  In light of respondent's motion,

**[\*7]** his supporting affidavit, and petitioner's response, which alleges no dispute as to any material fact, we conclude that this case may be adjudicated summarily.

B.    Theft Losses

Section 162(a) allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Section 165(a) permits a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section 165(e) provides: "For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss." In all cases, the deduction is allowable only if the loss is bona fide. Sec. 1.165-1(b), Income Tax Regs.

The term "theft" is broadly defined to include larceny, embezzlement, and robbery. Sec. 1.165-8(d), Income Tax Regs.; see also Bellis v. Commissioner, 61 T.C. 354, 357 (1973), aff'd, 540 F.2d 448 (9th Cir. 1976). Normally, a loss will be regarded as arising from theft only if there is a criminal element to the appropriation of the taxpayer's property. See Edwards v. Bromberg, 232 F.2d 107, 110 (5th Cir. 1956); Johnson v. Commissioner, T.C. Memo. 2001-97, 81 T.C.M. (CCH) 1538, 1540. To substantiate a theft loss deduction, the taxpayer must prove both that a theft actually occurred under the law of the relevant State (or under an

**[*8]** applicable Federal criminal statute) and the amount of the loss. See Nichols v. Commissioner, 43 T.C. 842, 884-885 (1965); Alioto v. Commissioner, T.C. Memo. 2011-151, slip op. at 9, aff'd, 699 F.3d 948 (6th Cir. 2012).

On the basis of the pleadings filed, petitioner cannot satisfy any aspect of the section 165(e) requirements for demonstrating a theft loss. First, he has identified no genuine issue for trial as to whether a "theft" occurred under the law of any relevant jurisdiction. His assertion that his intellectual property has been stolen is based on his unsupported belief that criminal conspiracies are the only possible explanation for his vaporizer business' relative lack of success. He has alleged no facts to show that an infringement of his patent has occurred, much less that a crime has been committed under State or Federal law. Although patent No. 7,415,982 belongs to him, the mere existence of this patent is not sufficient to prove patent infringement. In any event, this is not the proper forum in which to litigate such a claim. See 35 U.S.C. sec. 281 (2006) ("A patentee shall have remedy by civil action for infringement of his patent."); 28 U.S.C. sec. 1338(a) (2006) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents[.]").

Second, petitioner has raised no genuine issue for trial concerning his ability to substantiate the amount of his supposed loss. Taxpayers are required to keep

[*9] permanent records sufficient to substantiate the amount of any claimed deduction. See Higbee v. Commissioner, 116 T.C. 438, 440 (2001); sec. 1.6001-1(a), Income Tax Regs. To substantiate a theft loss, a taxpayer must prove, at a minimum, the fair market value of the stolen property before the theft and the adjusted basis of the property. See Griggs v. Commissioner, T.C. Memo. 2008-234, 96 T.C.M. (CCH) 248, 256; sec. 1.165-8(c), Income Tax Regs. (providing that the amount of a theft loss deduction "shall be determined consistently with the manner prescribed in § 1.165-7 for determining the amount of casualty loss"); sec. 1.165-7(b)(1), Income Tax Regs. (providing that amount deductible as a casualty loss is determined by reference to fair market value or adjusted basis of damaged property).

Petitioner has supplied no evidence concerning the fair market value of his patent before the alleged theft or the patent's adjusted basis. His calculation of "loss" has nothing to do with the ex ante value of his patent but is based on his unsupported estimate of the portion of the worldwide vaporizer market to which he believes himself entitled. A taxpayer claiming a theft loss must supply sufficient evidence for the Court to make a reasonable estimate of the property's value. See Lockett v. Commissioner, T.C. Memo. 2008-5, 95 T.C.M. (CCH) 1029, 1031, aff'd, 306 Fed. Appx. 464 (11th Cir. 2009). Petitioner has failed to

[*10] set forth specific facts showing there is a genuine dispute for trial concerning his ability to do this. See Rule 121(d).

Finally, a taxpayer must claim a theft loss deduction for "the taxable year in which the taxpayer discovers the loss." Sec. 1.165-8(a)(2); see Asphalt Indus., Inc. v. Commissioner, 411 F.2d 13 (3d Cir. 1969), aff'g T.C. Memo. 1968-155. Petitioner claimed a theft loss deduction of $1 million for each of 2009, 2010, and 2011. He has set forth no specific facts tending to show that he "discovered" the supposed theft in one of these years as opposed to some prior year after his patent was filed in 2001. Indeed, petitioner has informed the IRS that he intends to claim similar deductions on his tax returns through the year 2070. Petitioner clearly is not claiming a loss deduction for "theft" but for alleged damage to his business from supposed anticompetitive behavior. Such damages, if they can be proved, are not deductible as "theft losses" under section 165(e).

Alternatively, petitioner contends that he is entitled to his $1 million deductions under section 186. Section 186(a) provides that, "[i]f a compensatory amount which is included in gross income" is received for a "compensable injury," a deduction is allowed equal to the lesser of the "compensable amount" or "the unrecovered losses sustained as a result of such compensable injury." Section 186(b)(1) defines a "compensable injury" to include "injuries sustained as a result

[*11] of an infringement of a patent issued by the United States." Even if petitioner could establish patent infringement, which he has not done, he has not alleged that he received, or included in gross income for 2009, 2010, or 2011, any "compensatory amount." See sec. 186(c) (defining "compensatory amount" to mean an amount received "as damages as a result of an award in, or in settlement of, a civil action for recovery for a compensable injury"). Section 186 has no possible application here.

C.     Accuracy-Related Penalty

The Code imposes a 20% accuracy-related penalty on any underpayment attributable to any substantial understatement of income tax. See sec. 6662(a), (b)(2). An understatement is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A). The tax deficiencies determined in the notice of deficiency, which we have sustained in full, reflect understatements that exceed $5,000 and 10% of the total tax required to be shown on petitioner's 2009, 2010, and 2011 returns. Respondent has thus carried his burden of production by demonstrating a "substantial understatement of income tax." See secs. 6662(b)(2), 7491(c).

Section 6664(c)(1) provides that the accuracy-related penalty shall not be imposed with respect to any portion of an underpayment "if it is shown that there

**[*12]** was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to * * * [it]." Once the Commissioner has carried his burden of production, the taxpayer bears the burden of proving reasonable cause and good faith. Higbee v. Commissioner, 116 T.C. at 446-447.

The decision as to whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that may signal reasonable cause and good faith "include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Ibid. "Reasonable cause" may also be shown by demonstrating reliance on the advice of a competent tax professional. Id. para. (c).

Petitioner had no colorable basis for claiming $1 million theft loss deductions for 2009, 2010, and 2011. He has set forth no specific facts to show that there is a genuine dispute for trial in this regard. His claiming these deductions reflects not a genuine effort to ascertain his tax liabilities correctly but a misguided effort to recoup from the IRS profits that he thinks "pirates" have taken from him. He has set forth no specific facts showing there is a genuine dispute as to whether he used the services of a tax return preparer or that he otherwise relied on

**[*13]** professional tax advice.  We accordingly sustain respondent's imposition of an accuracy-related penalty for each year at issue.

To reflect the foregoing,

<u>An appropriate order and decision for respondent will be entered</u>.