RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 12a0380p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DAVID S. ALIOTO; MELANIE S. ALIOTO,
     *Petitioners-Appellants*,

    *v.*

COMMISSIONER OF INTERNAL REVENUE,
     *Respondent-Appellee.*

No. 12-1201

Appeal from the United States Tax Court—No. 11312-09.

Decided and Filed: November 7, 2012

Before: MOORE and COOK, Circuit Judges; BERTELSMAN, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Dianne F. Marx, SEBALY SHILLITO + DYER, Dayton, Ohio, for Appellants. Marion E.M. Erickson, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. In 2000 and 2001, Petitioner-Appellant David S. Alioto ("Alioto") spent several hundred thousand dollars of his own money on expenses relating to a new business venture with which he was involved. Although Alioto alleges that he believed he would be reimbursed for the funds expended on behalf of the business, he was never fully repaid. Alioto and his wife, Petitioner-Appellant Melanie S. Alioto (together, the "Aliotos"), sought to deduct the unreimbursed funds as losses on their joint federal income tax return for tax year 2005. Alioto sought

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

to carry forward some of these losses as deductions on his individual income tax returns for tax years 2006 and 2007. Respondent-Appellee Commissioner of Internal Revenue (the "Commissioner") denied the deductions and issued notices of deficiency to the Aliotos. The Aliotos contested the denial of the deductions, and the Tax Court agreed with the Commissioner's determination, finding that the Aliotos had not met their burden of proof to show that the deductions were allowable as business losses or theft losses in the tax years claimed. Because we find no clear error in the Tax Court's determination that the Aliotos had not met their burden of proof to establish that the losses were deductible in tax years 2005, 2006, and 2007, we **AFFIRM**.

## I. BACKGROUND

Alioto is a businessman involved in the transportation and logistics industry. Appendix for Brief of Appellants ("Appellant App.") at 93 (Trial Tr. at 7:20–22). From 1995 to 2000, he founded and developed his own company, which was in the business of transporting unusual items that other commercial carriers would not transport. *See id.* at 94 (Trial Tr. at 8:7–9). In early 2000, Alioto hired John Ratzenberger ("Ratzenberger"), an actor famous for his role on the television show Cheers, to speak at a conference relating to Alioto's business. *Id.* (Trial Tr. at 8:9–22). Ratzenberger approached Alioto about a new business venture, called Big Red Tent ("BRT"), which was to involve using "celebrity talent" to "create short form media that would be sold to corporations" as internet advertisements. *Id.* at 96 (Trial Tr. at 10:3–21); *see also* Appellee's Appendix ("Appellee App.") at 310–20 (Ex. 15-P, Big Red Tent Business Plan).

Alioto testified that he agreed to join the venture as a CEO and agreed to provide services including setting up the office operations and meeting with investment and venture firms to raise capital for the business. *See* Appellant App. at 97 (Trial Tr. at 11:8–22). During 2000 and 2001, Alioto proceeded to spend approximately $200,000 of his own money on expenses related to BRT. *Id.* at 99 (Trial Tr. at 13:6–7). Alioto contends that he believed he would be reimbursed by Ratzenberger for all of the BRT-related expenses. *See id.* at 112 (Trial Tr. at 26:1–4). However, Alioto asserts that he

was never fully reimbursed.  He did receive approximately $35,081 as reimbursement from a $100,000 line of credit he took out on behalf of BRT, and in mid-2001, he was reimbursed $52,875.96 from Ratzenberger for BRT-related expenses.  *See* Appellant Br. at 6–7; Appellee App. at 340 (Ex. 16-R, July 16, 2001 Fax).

Ultimately, Alioto testified that he "removed [himself] from the situation in mid 2001" because the business was a financial "drain" on him.  Appellant App. at 99 (Trial Tr. at 13:14–15, 13:10).  He stated at trial that by early 2002, he came to believe that some of Ratzenberger's representations regarding his financial condition had been false. *See id.* at 112 (Trial Tr. at 26:20–24); *see also* Appellee App. at 308–09 (Ex. 14-P, Feb. 7, 2002 Letter to Ropes & Gray) (indicating that Alioto believed Ratzenberger had made misrepresentations regarding his finances).  Alioto testified that after he ended his involvement with BRT, he continued to seek reimbursement from Ratzenberger throughout 2002, 2003, and 2004, through emails, phone calls, and discussions with Ratzenberger.  *See* Appellant App. at 102 (Trial Tr. at 16).  None of these emails were submitted as evidence to the Tax Court.  Alioto asserts that he received a "very specific" email in 2004 or 2005 from Ratzenberger's agent from which he inferred that no further reimbursement was forthcoming, and it was at this time that Alioto concluded that he would not receive any repayment.  *See id.* at 103 (Trial Tr. at 17:6–15).  Alioto has not produced this email.

On October 14, 2005, Alioto commenced a voluntary Chapter 7 bankruptcy proceeding in the U.S. Bankruptcy Court for the Southern District of Ohio.  *See* Appellant App. at 15 (Stipulation of Facts ¶ 18).  He listed $341,363 as outstanding business expenses or loans owed to him from BRT as part of his assets.  *See* Appellee App. at 273 (Ex. 7-J, Bankruptcy Pet. Sched. B).  He testified that the majority of creditors' nonpriority claims against him were related to BRT expenses.  *See* Appellant App. at 147–153 (Trial Tr. at 60–66).  The result of the bankruptcy petition was a "no asset" Chapter 7 case, and Alioto received a discharge on February 27, 2006.  *Id.* at 16 (Stipulation of Facts ¶¶ 21–22); Appellee App. at 300 (Ex. 10-J, Discharge of Debtor).

The Aliotos filed a joint individual federal income tax return for tax year 2005, and for tax years 2006 and 2007, Alioto filed separate individual returns. *See* Appellant App. at 10–11 (Stipulation of Facts ¶¶ 2–4). In these returns, the Aliotos claimed loss deductions for the unreimbursed BRT-related expenses. On February 12, 2009, the Commissioner issued notices of deficiency and assessed penalties related to the Aliotos' 2005, 2006, and 2007 tax returns. *See id.* at 11 (Stipulation of Facts ¶¶ 5–6). The Aliotos disputed the deficiency determinations and the assessed penalties, and petitioned the United States Tax Court for relief on May 12, 2009. *See id.* at 2–3 (Petition). After a trial was held, the Tax Court found that the Aliotos were liable for the deficiencies, but not for the penalties. *See Alioto v. Comm'r*, 101 T.C.M. (CCH) 1722, 2011 WL 2601511, at *5 (2011). The Aliotos timely appealed the decision as to the deficiencies, *see* Appellant App. at 54 (Notice of Appeal), and the Commissioner did not appeal the decision as to the penalties. This court has jurisdiction over the appeal pursuant to 26 U.S.C. § 7482.

## II. STANDARD OF REVIEW

"We review the Tax Court's factual findings for 'clear error' and its application of law *de novo*." *Indmar Prods. Co. v. Comm'r*, 444 F.3d 771, 777 (6th Cir. 2006). Under the clear-error standard, we give deference to the Tax Court's findings of fact and to inferences drawn from those findings, and we give "even greater discretion to any credibility determinations made by the Tax Court." *See id.* at 777–78 (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 574–75 (1985)). The Tax Court's findings of fact will be upheld under the clear-error standard "unless we are left with a definite and firm conviction that a mistake has been made." *Kearns v. Comm'r*, 979 F.2d 1176, 1178 (6th Cir. 1992).

"The Commissioner's deficiency determinations are presumed correct and the taxpayer bears the burden of proving otherwise." *Ekman v. Comm'r*, 184 F.3d 522, 524 (6th Cir. 1999); *see Welch v. Helvering*, 290 U.S. 111, 115 (1933); *Kearns*, 979 F.2d at 1178; I.R.C. Rule 142(a). To defeat this presumption, the taxpayer must prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary and

erroneous, as well as the amount in deductions to which the taxpayer is entitled. *See United Dairy Farmers, Inc. v. United States*, 267 F.3d 510, 515–16 (6th Cir. 2001). Because "[d]eductions are a matter of legislative grace, . . . the taxpayer must satisfy the specific statutory requirements claimed to reduce a tax liability." *Ekman*, 184 F.3d at 524–25 (citing *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934)).

### III.  BUSINESS LOSSES

The Aliotos first argue that the losses relating to Alioto's involvement with BRT in 2000 and 2001 were deductible as business losses for tax year 2005.[1] Section 165(a) of the Internal Revenue Code states:  "There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise." 26 U.S.C. § 165(a).  For individuals, these deductions are limited to losses incurred in a trade or business, or otherwise incurred in a transaction entered into for profit, and to losses arising from certain casualties, such as fire, or from theft. *See id.* § 165(c).  A loss deduction under § 165(a) "shall be allowed . . . only for the taxable year in which the loss is *sustained*." Treas. Reg. § 1.165-1(d)(1) (emphasis added).  When an event results in a loss that gives rise to a "claim for reimbursement with respect to which there is a reasonable prospect of recovery," the loss will not be treated as sustained "until it can be ascertained with reasonable certainty whether or not such reimbursement will be received." *Id.* § 1.165-1(d)(2)(i).  Further, "[w]hether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances." *Id.*

The determination of whether a reasonable prospect of recovery exists is an objective inquiry, and the court "must determine what was a 'reasonable expectation' as of the close of the taxable year for which the deduction is claimed." *Ramsay Scarlett & Co. v. Comm'r*, 61 T.C. 795, 811 (1974), *aff'd*, 521 F.2d 786 (4th Cir. 1975); *see also*

---

[1] Alioto argues that the losses were sustained in 2005 for purposes of § 165 of the Internal Revenue Code, and that Alioto was entitled to carry forward some of the losses to tax years 2006 and 2007. *See* Appellant Br. at 10–11; *see also* 26 U.S.C. § 172.  If he was not entitled to deduct the losses in 2005, then he also was not entitled to apply the carryover provisions to deduct the losses in tax years 2006 and 2007.

*Vincentini v. Comm'r*, 429 F. App'x 560, 564 (6th Cir. 2011) (stating that a determination of whether a reasonable prospect of recovery existed for a particular taxable year involves an objective standard).  The analysis "requires a practical approach" and involves consideration of "all pertinent facts and circumstances." *Boehm v. Comm'r*, 326 U.S. 287, 292 (1945).  The taxpayer's honest, subjective belief as to the prospect of recovery cannot be "the controlling or sole criterion" used to determine when a loss is sustained. *Id*; *see also id.* ("[A] determination of whether a loss was in fact sustained in a particular year cannot fairly be made by confining the trier of facts to an examination of the taxpayer's beliefs and actions.").  Further, the taxpayer is explicitly required to produce "objective evidence" if he or she claims that a loss is sustained in a particular year because of an abandonment of a claim for reimbursement. Treas. Reg. § 1.165-1(d)(2)(i) ("When a taxpayer claims that the taxable year in which a loss is sustained is fixed by his abandonment of the claim for reimbursement, *he must be able to produce objective evidence of his having abandoned the claim*, such as the execution of a release." (emphasis added)).

Because Alioto has the burden of demonstrating that the losses were deductible under § 165 in tax years 2005, 2006, and 2007, he has the burden of proving that the losses incurred through his involvement in BRT in 2000 and 2001 were not sustained until 2005. *See Ekman*, 184 F.3d at 524–25.  Alioto's theory is that prior to 2005, it could not be ascertained with reasonable certainty whether or not he would receive reimbursement from Ratzenberger for his BRT-related expenses. *See* Appellant Br. at 14.  He contends that in 2005, he abandoned his claim for reimbursement, and thus the losses were sustained in that year because there was no longer a reasonable prospect of recovery.  The Tax Court found that there was no objective evidence that Alioto abandoned his claim for reimbursement in 2005, and further found that the weight of the evidence indicated that it was in 2001 and early 2002 when Alioto could ascertain with reasonable certainty that the BRT-related expenses would not be reimbursed. *Alioto*, 2011 WL 2601511, at *3.

On appeal, Alioto points to two pieces of evidence to support his theory of abandonment. First, he cites his own testimony that he received an email in 2005 from Ratzenberger's agent notifying him that no further reimbursement was forthcoming. *See* Appellant App. at 113 (Trial Tr. at 27:8–13). Alioto did not produce this email at trial, nor did he otherwise prove that the communication occurred. *See Alioto*, 2011 WL 2601511, at *3. Given that Alioto's statements about the contents of the email were hearsay, his testimony was admissible only to show his subjective understanding that he would not be paid back, as the trial judge noted on the record. *See* Appellant App. at 103–04 (Trial Tr. at 17:21–18:5); *see also* Fed. R. Evid. 801(c); 802. Alioto's testimony concerning the email does not meet the requirement of "objective evidence" to prove abandonment. *See* Treas. Reg. § 1.165-1(d)(2)(i); *Vincentini*, 429 F. App'x at 564–65 (upholding the Tax Court's finding that a taxpayer's testimony was not credible relating to the reasonable-prospect-of-recovery standard for loss deductions, where the sole evidence presented was the taxpayer's uncorroborated testimony regarding written requests for reimbursement and participation in conference calls with legal counsel).

Second, Alioto points to his petition for bankruptcy, which was filed in 2005. *See* Appellee App. at 266 (Ex. 6-J, Notice of Bankruptcy Case Filing). Alioto asserts that the fact that he was "forced" to file for bankruptcy is "evidence of the uncollectibility of the reimbursement claim at that time." Appellant Br. at 12. However, the Tax Court was not required to infer from the fact that Alioto filed for bankruptcy in 2005 that this was the year in which it became ascertainable with reasonable certainty that no reimbursement would be received. Alioto's decision to file for bankruptcy could have been motivated by a variety of considerations. If anything, that Alioto filed for bankruptcy in 2005 may lend weight to his assertion that he subjectively believed there was no longer a prospect of recovery in 2005—but even this does not necessitate a finding, using an objective standard, that a reasonable certainty regarding the reimbursement did not exist until that year.

The Tax Court found that other evidence in the record indicated that the losses were sustained prior to 2005. The judge determined that "[i]t is clear that at the end of

2001 and early 2002 Mr. Alioto understood that the expenses would not be paid back." *Alioto*, 2011 WL 2601511, at *3. Although Alioto's testimony that he took action to recover his investment during 2002, 2003, and 2004 may be considered as some evidence of lack of abandonment, *see Abraitis v. Comm'r*, T.C.M. (RIA) 98,239, 1998 WL 352259, at *2 (1998), such testimony cannot be the sole factor used to determine at what point there was no longer a reasonable prospect for recovery, *see Boehm*, 326 U.S. at 292. Further, we note that while Alioto testified that he pursued reimbursement through phone calls and emails up until 2005, he did not produce any of the emails at trial.[2] Especially given the great deference we give to a trial court's credibility determinations, *see Indmar Prods.*, 444 F.3d at 778, the Tax Court's conclusion that Alioto did not produce objective evidence that he abandoned his claim in 2005 did not constitute clear error.[3]

## IV. THEFT LOSSES

The Aliotos argue in the alternative that the BRT-related losses were deductible as theft losses, pursuant to § 165(e), because Ratzenberger allegedly stole money from Alioto using false pretenses. *See* Appellant Br. at 17. A loss from theft may be deducted under § 165(c)(3), *see* Treas. Reg. § 1.165-8(a)(1), and the loss "shall be treated as sustained during the taxable year in which the taxpayer discovers such loss." 26 U.S.C. § 165(e). Whether a "theft" has occurred for purposes of § 165 is determined by the law of the jurisdiction where the theft took place. *See MTS Int'l, Inc. v. Comm'r*, 169 F.3d 1018, 1021 (6th Cir. 1999) ("The tax court looks to state law to determine whether a particular loss constitutes a § 165(e) theft loss."); *Estate of Meriano v. Comm'r*, 142 F.3d 651, 658 (3d Cir. 1998); *Bellis v. Comm'r*, 540 F.2d 448, 449 (9th Cir. 1976) ("It is

---

[2] Further, the February 2002 letter that Alioto sent to his legal counsel which was admitted into evidence demonstrates only that as of early 2002, Alioto subjectively believed Ratzenberger had made misrepresentations and wanted to pursue reimbursement. Appellee App. at 308–09 (Ex. 14-P, Feb. 7, 2002 Letter to Ropes & Gray).

[3] Because Alioto's failure to prove abandonment is sufficient to sustain the Tax Court's decision, we do not address whether Alioto met his evidentiary burden as to whether the losses could be considered losses incurred in a trade or business under § 165(c)(1), or as to the specific amounts that could be deducted.

fundamental that the law of the Jurisdiction where the loss is sustained determines whether a theft has occurred for purposes of Section 165(e).").

The Aliotos make an argument, to which the Commissioner does not object, that Massachusetts law applies to the contested theft losses. *See* Appellant Br. at 17; Appellee Br. at 28 n.5. A person is guilty of larceny in Massachusetts if, "with intent to defraud and by a false pretense, [he] induces another to part with property of any kind." MASS. GEN. LAWS ANN. ch. 266, § 34 (West 2012). Prosecution under this statute requires proof that:

> (1) a false statement of fact was made; (2) the defendant knew or believed that the statement was false when he made it; (3) the defendant intended that the person to whom he made the false statement would rely on it; and (4) the person to whom the false statement was made did rely on it and, consequently, parted with property.

*Commonwealth v. Mills*, 764 N.E.2d 854, 863 (Mass. 2002). Based on these elements, Alioto would need to prove that Ratzenberger knowingly made false statements to Alioto, and that Ratzenberger intended for Alioto to rely on those statements, in order to show that he was entitled to deduct the BRT losses as theft losses. *See* Treas. Reg. § 1.165-8(d) (stating that "[f]or purposes of [§ 165] the term 'theft' shall be deemed to include . . . larceny").

The Aliotos argue on appeal that the evidence presented at trial establishes the elements of larceny under Massachusetts law. *See* Appellant Br. at 18–19. The Tax Court found that "[t]here is nothing in the record that would prove that Mr. Ratzenberger committed any wrongdoing. Mr. Alioto did not present any evidence demonstrating that Mr. Ratzenberger or his agents did anything illegal and failed to show any specific promises or agreements made by Mr. Ratzenberger and his agents." *Alioto*, 2011 WL 2601511, at *4. After reviewing the record, we find no clear error in the Tax Court's determination. No evidence was presented of any criminal intent on the part of Ratzenberger. *See Krahmer v. United States*, 810 F.2d 1145, 1148 (Fed. Cir. 1987) (holding that a taxpayer was not entitled to a theft-loss deduction because he "failed to prove that either painting was sold with an intent to defraud him"); *cf. Farcasanu v.*

*Comm'r*, 436 F.2d 146, 149 (D.C. Cir. 1970) (noting that courts construing the theft-loss provision "have consistently required that the taking be accompanied by criminal intent in order to render the taxpayer's loss deductible"). Further, Alioto did not present any evidence that Ratzenberger knowingly made false statements, aside from Alioto's own testimony regarding alleged representations made to him. Alioto did not call Ratzenberger or any of his agents as witnesses, and did not present any written evidence of any promises made to Alioto. Although Alioto testified that there was a "formation agreement" between him and Ratzenberger, Alioto chose not to "share[]" the agreement with the court. Appellant App. at 170 (Trial Tr. at 83:12–13). Based on this trial record, there was no clear error in the Tax Court's finding that Alioto did not prove that a theft occurred under Massachusetts law. *See Washington v. Comm'r*, 974 F.2d 1339, No. 91-2143, 1992 WL 212177, at *3 (6th Cir. Sept. 1, 1992) (holding that when a taxpayer attempts to meet his burden of proof solely with his own testimony "uncorroborated by other evidence that would normally be available, the Tax Court may make the determination that the taxpayer's testimony is not credible") (citing *Davis v. Comm'r*, 866 F.2d 852, 859 (6th Cir. 1989)). Given the Tax Court's determination that the Aliotos had not met their burden of proof to show that a theft occurred, we agree with the Tax Court that Alioto was not entitled to deduct the BRT-related losses as theft losses under § 165(e).

## V.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the Tax Court in favor of the Commissioner's determination to deny the Aliotos' claimed loss deductions.