In re Lisa F. METS, Debtor.

Paul F. Milam, et al., Plaintiffs,

v.

Lisa F. Mets, Defendant.

Bankruptcy No. 11–55635.
Adversary No. 11–2471.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Aug. 30, 2013.

Joseph C. Winner, McFadden, Winner, Savage & Segerman, LLP, Columbus, OH, for Plaintiffs.

Richard K. Stovall, Columbus, OH, for Defendant.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

### I. Introduction

In the complaint initiating this adversary proceeding ("Complaint") (Doc. 1),

Paul F. Milam and Deborah K. Milam ("Plaintiffs") allege that Lisa F. Mets ("Defendant") made false representations "under oath" while her company was serving as the general contractor for the construction of the Plaintiffs' home prior to the commencement of the Defendant's bankruptcy case. Compl. ¶ 15. The Complaint seeks a declaration that any debt the Defendant owes the Plaintiffs "as the proximate result of the false representations" is nondischargeable under 11 U.S.C. § 523(a)(2)(A). Compl. at 3. Success on this claim requires the Plaintiffs to show that they justifiably relied on the Defendant's misrepresentations. *See Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 280–81 (6th Cir.1998). The only representations the Defendant made *under oath* in connection with the construction of the Plaintiffs' home appeared in certain notarized lien waivers ("Lien Waivers") that she provided to the Plaintiffs' construction lender, and the Plaintiffs have stipulated that they were unaware of the existence of the executed Lien Waivers until after the Defendant's company ceased working on the Plaintiffs' home. Thus, while conceding that certain of the Lien Waivers contained misrepresentations, the Defendant argues in her motion for summary judgment ("Motion") (Doc. 33) that the Plaintiffs could not possibly have relied on the Lien Waivers, because they were not even aware of their existence at the time they would have relied on them.

In response, the Plaintiffs assert that the Defendant made false representations to them on which they did in fact rely. These assertions are based on other stipulations of the parties and the accompanying exhibits, as well as on Mr. Milam's affidavit. Because the stipulations and the affidavit show that there is a genuine dispute as to material facts, the Court denies the Motion.

## II. Jurisdiction

The Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

## III. Background

In 2008, the Plaintiffs owned real property on which they decided to build a new home ("Property"). *See* Stipulation of Facts of Parties for Purpose of Adversary Proceeding ("Stipulations") (Doc. 29) ¶ 1, 3.[1] The Plaintiffs obtained a construction loan from Union Savings Bank ("Bank") in order to fund the project. Stipulations ¶ 12. On or about August 2, 2008, they entered into a new home construction contract ("Construction Contract") with Ashley Homes Limited ("Ashley Homes"), an Ohio limited liability company. Defendant was the sole member and president of Ashley Homes. Stipulations ¶¶ 2–3, 14.[2] Ashley Homes began construction on Plaintiffs' home sometime after August 8, 2008. Stipulations ¶ 6. During the construction, documents passed and funds flowed in the manner described below.

First, the "Defendant or someone else working under her direction at Ashley Homes initiated draw requests by contacting the Bank," and "the Bank would then supply Ashley Homes with two documents:

---

1. "The *Stipulations* were agreed to by the parties following the completion of written discovery and various depositions." Mot. at 3. "In an effort to simplify this case and to save the parties the expense of ordering transcripts of the three depositions taken in the case, the parties entered into detailed *Stipulations,* which *Stipulations* included identifying and attaching 15 exhibits." *Id.* at 4.

2. A copy of the Construction Contract is attached as Exhibit 1 to the Stipulations.

(a) 'Lien Waiver and Contractor's Affidavit,'... which are collectively referred to as 'Lien Waivers'; and (b) 'Payout Authorization[s]'...." Stipulations ¶ 12. Each Payout Authorization was to be signed by the Plaintiffs and included the following statement:

> If borrower [Plaintiffs] has made, or has caused to be made, improvements to the below subject property, borrower certifies that all work and materialm[e]n, and laborers have been paid in full, except the following:
>
> Claimant    Amount Claimed
>
> None        None

Stipulations ¶ 13; Copies of Payout Authorizations attached to the Stipulations.

"Defendant avers that she never expressly represented to either Plaintiff ... that all bills for labor and materials for Ashley Homes' subcontractors, laborers, and/or materialmen had been fully paid by Ashley Homes[.]" Stipulations ¶ 25. And the "Plaintiffs have no specific recollection of Defendant specifically saying that all such bills had been fully paid." Stipulations ¶ 25. But "Defendant, or someone else acting at her direction for Ashley Homes, represented that Ashley Homes was entitled to each draw and presented Plaintiffs with each respective Payout Authorization." Stipulations ¶ 28. "Based upon this, Plaintiffs represent that they believed that Defendant was causing Ashley Homes to pay for the necessary labor and materials as construction progressed." Stipulations ¶ 28. Similarly, each Lien Waiver had an "X" placed on the form, next to the following statement: "All bills for labor and material from Contractor's subcontractors, laborers, and/or materialmen have been fully paid by Contractor." Stipulations ¶ 13. "The Payout Authorization signed by Plaintiffs and the corresponding Lien Waiver signed by Defendant as president of Ashley Homes [were]

presented by Ashley Homes to the Bank. The Bank then disbursed the amounts indicated in the Lien Waivers directly to Ashley Homes." Stipulations ¶ 14.

On or about July 15, 2009, the Defendant advised the Plaintiffs that Ashley Homes could not complete the construction of the Plaintiffs' home. Stipulations ¶ 8. The Plaintiffs were forced to find other contractors to complete the construction. The aggregate amount that the Plaintiffs paid Ashley Homes and other entities to complete the construction of their home exceeded the contract price under the Construction Contract by more than $60,000. Stipulations ¶¶ 4, 7, 9. In addition, the Plaintiffs incurred legal fees and expenses in obtaining the release of mechanics' liens placed on their property as a result of Ashley Homes's failure to pay its subcontractors. Stipulations ¶ 30.

On May 25, 2011, the Defendant commenced a Chapter 7 bankruptcy case, and the Plaintiffs thereafter initiated this adversary proceeding. In the Complaint, the Plaintiffs alleged that "[f]rom time to time as construction of Plaintiffs' residence progressed, [Defendant] represented, *under oath*, that all bills of subcontractors and materialmen for labor and materials provided for construction of Plaintiffs' residence had been fully paid by Ashley Homes." Compl. ¶ 15 (emphasis added). This allegation clearly referred to the Lien Waivers, because "[t]he Lien Waivers were the only representations, *under oath*, that were made by Defendant as president of Ashley Homes in connection with the construction of the Property." Stipulations ¶ 15 (emphasis added). "The Lien Waivers were not given by Defendant, or anyone else acting for Ashley Homes, to Plaintiffs at the times they were prepared, signed and submitted to the Bank." Stipulations ¶ 24. And the "Plaintiffs were not aware of the existence of the executed

Lien Waivers . . . until sometime after July 15, 2009[,]" the date on which the Defendant informed the Plaintiffs that Ashley Homes was unable to complete the construction. Stipulations ¶ 26. In fact, "Plaintiffs were not aware of the executed Lien Waivers submitted by Defendant to the Bank until after they contacted counsel and arranged, with counsel's advice and assistance, to obtain such documents from the Bank." Stipulations ¶ 27.

## IV. Legal Analysis

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure ("Civil Rule(s)"), made applicable in this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009) (internal quotation marks omitted). A dispute is genuine only if it is "based on evidence upon which a reasonable [finder of fact] could return a [judgment] in favor of the non-moving party." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir.2009). And "[a] factual dispute concerns a 'material' fact only if its resolution might affect the outcome of the suit under the governing substantive law." *Id.*

### B. Section 523(a)(2)

The Plaintiffs seek a judgment that any debt the Defendant owes them is excepted from discharge by § 523(a)(2).[3] Section 523(a)(2)(A) of the Bankruptcy Code provides, in pertinent part, as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A). *See also Rembert*, 141 F.3d at 280–81 ("In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) [the creditor's] reliance was the proximate cause of loss.") (footnote omitted).

### C. The Lien Waivers

As the sole basis for summary judgment, the Defendant, while conceding that certain of the Lien Waivers contained false representations, *see* Mot. at 7,[4] argues that

---

**3.** In order to promote the fresh start policy of the Bankruptcy Code, "exceptions to discharge are to be strictly construed against the creditor." *Rembert*, 141 F.3d at 281. "The objecting creditor bears the burden of proof to establish that the debt is of a type excepted from discharge. . . ." *Hart v. Molino (In re*

*Molino)*, 225 B.R. 904, 907 (6th Cir. BAP 1998).

**4.** Despite this concession, the Defendant contends that she did not intend to mislead the Plaintiffs or anyone else. *See* Mot. at 7 & n.5.

the "Plaintiffs were not even aware of the written misrepresentations of [Defendant] as alleged in the Complaint until (i) long after the alleged misrepresentations were made, (ii) after [her] involvement in the construction matter was over, and (iii) after Plaintiffs sought legal counsel," so that "Plaintiffs ... could not have possibly relied upon the misrepresentations to their detriment or otherwise, as required by § 523(a)(2)(A) of the Bankruptcy Code." Mot. at 2. *See also* Mot. at 11 ("Plaintiffs clearly 'manufactured' their case, after the breach by Ashley Homes, and only after obtaining the previously unknown (to Plaintiffs) Lien Waivers, with counsel's assistance. Therefore, the 'reliance' element of Plaintiffs' case cannot be met.").

The Plaintiffs filed a memorandum in opposition to the Motion ("Objection") (Doc. 35) in which they contend that "[t]he Motion is premised upon an incomplete and misleading summary of the pertinent events." Objection at 2. In support of this contention, Mr. Milam submitted as an exhibit to the Objection an affidavit made on personal knowledge ("Milam Affidavit"), as permitted by Civil Rule 56(c)(4).[5] In the Milam Affidavit, Mr. Milam states, among other things, that:

> At the closing of the loan, a Bank representative explained the general procedure that would be required for draw disbursements. We were shown the [Lien Waiver] forms to be signed by [the Defendant] as the representative of [Ashley Homes] and [to be] submitted ... to the Bank as the documentation that Ashley Homes was entitled to a draw.
>
> I understood that Defendant would be signing a [Lien Waiver] and submitting [it] to the Bank in order to obtain the draw that would be charged against our loan account.

Milam Aff. ¶¶ 4–5.

■ In her reply to the Objection ("Reply") (Doc. 36), the Defendant argues that these statements are inadmissible because they are based on hearsay statements of a representative of the Bank. *See* Reply at 4. The statements, however, are admissible for the purpose of establishing Mr. Milam's *understanding* of what was to happen before Ashley Homes was entitled to obtain a draw. *See Alioto v. Comm'r*, 699 F.3d 948, 954 (6th Cir.2012) (holding that plaintiff's testimony regarding receipt of e-mail in which he was advised "that no further reimbursement was forthcoming" was admissible to establish the plaintiff's "subjective understanding that he would not be paid back"); *Kessler v. Riccardi*, 363 Fed.Appx. 350, 357 (6th Cir.2010) ("Kessler obtained much of his understanding about the role of a mentor/sponsor from conversations with an undisclosed member of NARSAD, [and] Riccardi classifies [this] as inadmissible hearsay inappropriate for consideration in a summary judgment ruling. But because Kessler testified about his conversation with a senior member of the NARSAD council to show the basis of his belief that he could not help her, not for the truth of the matter asserted, the conversation is not hearsay and the district court did not err in considering it."). The Sixth Circuit's *Alioto* and *Kessler* decisions were based on Rule 801(c) of the Federal Rules of Evidence, under which a statement is hearsay only if it is offered by a party "to prove the truth of the matter asserted." Fed. R.Evid. 801(c)(2). Because Mr. Milam is

---

5. This rule provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4).

offering his statements regarding what he was advised at the loan closing to establish his understanding of the draw process, not for the purpose of proving the truth of what he was told about the process, his statements are not inadmissible hearsay.

The Defendant further contends that the Stipulations are inconsistent with the Milam Affidavit's statements regarding the Lien Waivers. As support, the Defendant points to the stipulations that the "[t]he Lien Waivers were not given by Defendant, or anyone else acting for Ashley Homes, to Plaintiffs at the times they were prepared, signed and submitted to the Bank," Stipulations ¶ 24, that the "Plaintiffs were not aware of the existence of the executed Lien Waivers ... until sometime after July 15, 2009," Stipulations ¶ 26, and that "Plaintiffs were not aware of the executed Lien Waivers submitted by Defendant to the Bank until after they contacted counsel and arranged, with counsel's advice and assistance, to obtain such documents from the Bank." Stipulations ¶ 27. The Defendant contrasts those stipulations with the statement in the Milam Affidavit that Mr. Milam "understood that Defendant would be signing a corresponding Lien Waiver ... and submitting [it] to the Bank in order to obtain the draw...." Milam Aff. ¶ 5. The Defendant describes that statement as "totally inconsistent" with the stipulations in which the Plaintiffs disclaimed awareness of the existence of the executed Lien Waivers until after they contacted counsel. Reply at 5–6. But an understanding that a document was going to be signed is not incompatible with a subsequent lack of awareness that the document was actually signed. The Stipulations and the Milam Affidavit, therefore, are not necessarily inconsistent with one another.

■ The Stipulations, however, are inconsistent with the Plaintiffs' contention in the Complaint that they relied on statements the Defendant made under oath (which could only refer to the Lien Waivers). Indeed, in the briefs they submitted after the filing of the Motion, the Plaintiffs do not argue that they relied on the Lien Waivers themselves; instead, they appear to rely on their understanding that the Lien Waivers would be submitted to the Bank. See Objection at 8; Doc. 38 at 3, 4. That is too fine a distinction. A party to a transaction who understands that a document is to be executed, and who then alleges reliance on the document, would not stipulate to a lack of awareness of the existence of the document merely because he or she had not seen an executed copy. The Plaintiffs argue that the Stipulations with respect to the Lien Waivers meant only that they "*did not see* the [Lien Waivers] executed by Defendant until after Ashley Homes defaulted." *See* Pls.' Mem. Contra Def.'s Objection to Inclusion of Aff. of Paul Milam (Doc. 38) at 5 (emphasis added). But that is not what the Stipulations say. If that is what the Plaintiffs meant, they presumably would have said so more clearly—or at the very least would not have disclaimed awareness of the very existence of the Lien Waivers.[6]

6. The "[d]etermination of the meaning and effect of a stipulation ... is not a factual finding...." *Braxton v. United States*, 500 U.S. 344, 350, 111 S.Ct. 1854, 114 L.Ed.2d 385 (1991). Thus, the parties' disagreement over the meaning of the stipulation does not itself give rise to a genuine factual dispute. *See Omaha Indem. Co. v. Johnson & Towers, Inc.*, 599 F.Supp. 215, 218 (E.D.N.Y.1984)

("Plaintiff and intervenors contend that ... the language [of the stipulation at issue] is not explicit and requires the Court to look behind the letter of the Stipulation for the purpose and intent of the parties in entering into it. The meaning and effect of the Stipulation, they argue, requires testimony and findings of fact and is not an appropriate subject for summary judgment. It is axiomatic that

■ To be clear, "[c]ourts may not resolve credibility disputes on summary judgment," *Dawson v. Dorman*, No. 12–6163, 2013 WL 2397410, at *2 (6th Cir. June 3, 2013), and the Court therefore is not questioning Mr. Milam's credibility, as the Defendant appears to do. Memories may change, sometimes developing more detail in the process, and perhaps Mr. Milam's recollection was sharpened after the Complaint and Stipulations were filed. Nonetheless, as stipulations of fact, the Stipulations are binding. *See Christian Legal Soc. v. Martinez*, —— U.S. ——, 130 S.Ct. 2971, 2983, 177 L.Ed.2d 838 (2010) (noting that the Supreme Court has "refused to consider a party's argument that contradicted a joint stipulation ... [because] ... factual stipulations are formal concessions ... that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact, [making] a judicial admission ... conclusive in the case") (internal quotation marks and citation omitted).

If this matter proceeds to trial, therefore, the Court will not ignore the Plaintiffs' stipulation that they were unaware of the existence of the executed Lien Waivers until after they consulted counsel. In light of that stipulation, it would be difficult for the Plaintiffs to establish reliance on the Lien Waivers or on their understanding that they were to be submitted to the Bank. As discussed below, however, the

dischargeability analysis does not end with the Lien Waivers.

## D. The Payout Authorizations

■ The Milam Affidavit also alleges reliance on the Payout Authorizations, which were addressed in, and attached as exhibits to, the Stipulations. *See* Stipulations ¶¶ 13–14, 28. In the Milam Affidavit, Mr. Milam states:

Defendant from time to time told us[7] that Ashley Homes was entitled to a draw and we signed a *Payout Authorization*. . . . in order [for Ashley Homes] to obtain the draw that would be charged against our loan account.

. . . .

Because she had the information regarding whether the costs to the date of each draw to construct our home had been paid and I did not, I relied upon Defendant for the accuracy of the representations in the *Payout Authorizations*. I did not think that Defendant would tell us to sign a document that did not state the truth regarding the status of the project.

If Defendant had disclosed the truth, i.e., that our money was not being utilized to construct our home, and that Ashley Homes was seriously delinquent in meeting its obligations under the *New Home Construction Contract* dated August 2, 2008 (the "Contract"), then my wife and I would not have approved the

---

where the language of an agreement is explicit and unambiguous the courts must give it its plain meaning. Paragraph 6 of the May 19th Stipulation is explicit and this Court declines to read in ambiguities or otherwise alter its plain meaning. The Stipulation was the product of negotiation and bargaining and was entered into with the advice of counsel. Consequently, the owner of the yacht and the subrogee are held to the Stipulation.").

7. The statement set forth in the Milam Affidavit that "Defendant from time to time *told us* that Ashley Homes was entitled to a draw" is *not inconsistent with the Stipulations*. In the Stipulations, the parties stated that "Defendant, or someone else acting at her direction for Ashley Homes, represented that Ashley Homes was entitled to each draw and presented Plaintiffs with each respective Payout Authorization." Stipulations ¶ 28. The Stipulations do not identify to whom the representations were made.

*Payout Authorizations.* We would have declared the Contract in default and fired Ashley Homes before the project got further under water.

Milam Aff. ¶¶ 5–7. In the Objection, the Plaintiffs point out that the Construction Contract, a copy of which was attached as Exhibit 1 to the Stipulations, contains the following provision:

> Owner [Plaintiffs] authorizes their Lender, if any, to make payments directly to Builder [Ashley Homes] without further approval when requested with the exception of the last draw. Upon receipt of each draw payment, Builder shall affirm that all labor, materials and sub trades for which the draw's intended to pay have been paid in full.

Construction Contract ¶ 4. The entity or person to whom the affirmation was to be made is not specified.

Based on that provision of the Construction Contract and the Payout Authorizations that were presented to them, the Plaintiffs make the following argument in support of their claim of nondischargeability:

> Defendant represented to Plaintiffs that Ashley Homes was entitled to each draw and sought Plaintiffs' approval of the *Payout Authorization* required by the Bank. Those representations were made in the context of the Contract provision that "[u]pon receipt of each draw payment, [Ashley Homes] shall affirm that all labor, materials and sub trades for which the draw's intended to pay have been paid in full." ... Defendant now admits that the [Lien Waivers] she signed under oath in order to obtain Plaintiffs' money from the Bank were false. (*Motion,* pp. 7, 12.) It follows, of course, that the *Payout Authorizations* presented to Plaintiffs by Defendant and the representations that Ashley Homes was entitled to the draws under the terms of the Contract were also false.

> . . . .

> The Motion fails to establish that there is no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law. Placed in proper context, there is abundant evidence that Defendant made "false representations" upon which Plaintiffs relied to their detriment.

Objection at 8–9, 12.

This argument is consistent with the Stipulations and the documents attached as exhibits to the Stipulations. As the parties stipulated, either the "Defendant, or someone else acting at her direction for Ashley Homes ... presented Plaintiffs with each respective Payout Authorization." Stipulations ¶ 28. And each Payout Authorization stated that "[t]his is to certify that Ashley Homes, Ltd. contractor for Paul F. and Deborah K. Milam is/are entitled to a payment ... for work completed...." *See* Payout Authorizations attached to the Stipulations.[8]

Further, each Payout Authorization included the following representation: "If borrower [Plaintiffs] has made, or has caused to be made, improvements to the below subject property, borrower certifies that all work and materialm[e]n, and laborers have been paid in full." Stipulations ¶ 13. It is unclear whether the purpose of the representation in the Payout Authorizations that all claims had been paid in full except for those listed—and none were—was to disclose the amount and holder of

---

8. The certification of entitlement to a payment set forth in each Payout Authorization may be the basis for Mr. Milam's statement that the Defendant "told us" that Ashley Homes was entitled to a draw; it also is possible that "told us" refers to communications separate from the representations made in the Payout Authorizations.

each claim arising from improvements made by Ashley Homes or whether it was intended to address amounts owing due to improvements made by the Plaintiffs independent of Ashley Homes (or perhaps improvements made both through Ashley Homes and independently of Ashley Homes). On one hand, it seems odd to use the conditional statement "if borrower has made, or has caused to be made, improvements to the [Property]" immediately after a sentence certifying that Ashley Homes is entitled to a payment for work completed, when the work would itself have resulted in improvements to the Property. This suggests that the certification refers to improvements made by the borrower independently of Ashley Homes. On the other hand, neither of the parties has argued that the borrower's certification did not cover claims incurred as a result of work performed by Ashley Homes. Nor does the summary judgment record make clear whether it was the Plaintiffs or the Defendant (or someone acting on her behalf) who inserted the word "None" into the Payout Authorizations, effectively representing that there were no unpaid claims. If the representation of no unpaid claims set forth in each Payout Authorization related to improvements made through Ashley Homes, and if the Defendant or her agent was the one who caused the word "None" to be placed in each Payout Authorization, then at least some of the Payout Authorizations arguably contain false representations made by the Defendant to the Plaintiffs.

■ Because the Court's denial of the Motion is based in part on the Milam Affidavit, the Defendant's objection to the use of the Milam Affidavit ("Objection to Affidavit") (Doc. 37) must be addressed. According to the Defendant, "statements in the Affidavit that Mr. Milam makes on behalf of his wife, with the various refer-

ences to 'my wife' 'we' and 'us' are not Mrs. Milam's direct statements, but hearsay about what Mrs. Milam, a party herein, would or would not have done." Objection to Aff. at 5. To the contrary, it is not hearsay for Mr. Milam to state that the Defendant told him and his wife that Ashley Homes was entitled to a draw or that the Defendant presented them with the Payout Authorizations, because those are statements regarding what the Defendant, not Mrs. Milam, allegedly said and did. As statements of the Defendant, they are admissible. *See* Fed.R.Evid. 801(d)(2) (stating that an opposing party's statement does not constitute hearsay).

■ The Defendant also objects to Mr. Milam's statement that he "relied upon the Defendant for the accuracy of the representations in the Payout Authorizations" and that he "did not think that Defendant would tell us to sign a document that did not state the truth regarding the status of the project." Doc. 37 at 6. In support of this objection, the Defendant relies on *Kaylor v. Holsinger (In re Holsinger)*, 437 B.R. 260 (Bankr.S.D.Ohio 2010). In *Holsinger*, the bankruptcy court struck, among others, the following two statements from the plaintiff's affidavit:

I believe that they [Defendants] used the sham of a corporation to prevent me from holding them liable for any future problems.

The [Defendant Shirley A. Holsinger] knew or should have known that I was relying on Mr. Holsinger's statements as to the time when the job would be completed, and the quality of work that they would perform on my home.

*Holsinger*, 437 B.R. at 276. The bankruptcy court struck these statements because they reflected speculation by the *plaintiff* about the motive of the *defendants* and whether the defendants knew or should have known about the plaintiff's

reliance on them. By contrast, the Milam Affidavit reflects Mr. Milam's understanding, his reliance and his beliefs. *See* Milam Aff. ¶ 6 ("I relied upon Defendant for the accuracy of the representations in the *Payout Authorizations.* I did not think that Defendant would tell us to sign a statement that did not state the truth regarding the status of the project."). In fact, as the Plaintiffs point out, the bankruptcy court in *Holsinger* declined to strike a statement made by the plaintiff that "I relied upon Defendants' false, misleading and deceptive acts and practices to my detriment when I executed the contract with Colonial City . . . ." *Holsinger,* 437 B.R. at 277.

Based on the statements made in the Milam Affidavit and the Stipulations regarding the Payout Authorizations, as well as its review of the Payout Authorizations, the Court concludes that there is a genuine dispute as to material facts.

### V. Conclusion

For the foregoing reasons, the Court **DENIES** the Motion. The Court will schedule a status conference in this adversary proceeding by separate order.

**IT IS SO ORDERED.**