NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0133n.06

Case No. 25-1568

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| MICHAEL H. SHAUT, | ) | **FILED**<br>Mar 12, 2026<br>KELLY L. STEPHENS, Clerk |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE<br>UNITED STATES TAX COURT |
| | ) | |
| COMMISSIONER OF INTERNAL REVENUE, | ) | |
| Respondent-Appellee. | ) | |
| | ) | OPINION |
| | ) | |

Before: COLE, CLAY, and MURPHY, Circuit Judges.

COLE, Circuit Judge. For some time, Michael Shaut led Downing Investment Partners. Following an investigation, the government criminally prosecuted several Downing principal officers for fraud in 2019. In Shaut's tax return for that year, he claimed deductions for business expenses, theft loss, and net operating losses that he primarily incurred as a result of the fallout. The IRS examined Shaut's tax return and determined an income tax deficiency. Shaut filed a petition with the tax court, and after a trial, the tax court agreed with the IRS. Shaut appeals the tax court's decision sustaining his deficiency determination. For the following reasons, we affirm.

I.

Shaut is an attorney and entrepreneur. Previously, he started and sold a student-loan company and later founded Carbon Vision, a solar energy company. In 2014, Shaut learned about Downing, which was developing patent-pending medical software. After meeting with David Wagner, a founding principal of the partnership, he joined Downing as its president.

As part of his employment offer, Shaut initially agreed to invest $500,000 in the partnership. Shaut produced bank records substantiating $250,000 of that investment. In October 2014, given funding difficulties, Shaut stopped taking a salary from Downing and agreed to secure additional investors for the partnership. Shortly thereafter, Shaut significantly stepped back from the day-to-day operations of the company. He ceased being an officer and took on a role more akin to managing director. Shaut claims to have made additional loans to Downing between August 2015 and October 2016 that, together with his 2014 initial investment, totaled $794,000. Shaut proffered evidence supporting a total investment of $508,500.

In 2016, Shaut realized Downing's business ventures were stagnating and he began to distrust Wagner. Shaut eventually learned about CliniFlow Technologies, a new entity into which Wagner and fellow Downing principal Marc Lawrence were improperly funneling resources. Beginning in 2016, Downing's activities led to substantial litigation. For his part, Shaut was named in 17 lawsuits. One arbitration resulted in a $2.5 million liability for Shaut and other Downing officers.

Additionally, the government launched a criminal investigation into Downing and some of its officers. The government charged Wagner for "his direction of a Ponzi-like investment scheme that resulted in the loss of approximately $10 million and harmed approximately 40 investors." *Wagner v. United States*, Nos. 19-CR-0437, 22-CV-0360, 2023 WL 2330690, *1 (S.D.N.Y. March 2, 2023). Wagner eventually pleaded guilty to two counts of securities fraud and one count of wire fraud. *Id.* Lawrence was similarly charged and pleaded guilty to three separate charges. *United States v. Lawrence*, No. 19-CR-0437, 2022 WL 4000904, at *1 (S.D.N.Y. Sep. 1, 2022). The government did not pursue charges against Shaut, who returned to the practice of law.

Shaut timely filed his 2019 income tax return, claiming deductions for a $720,000 long-term capital loss for his shares in Downing and a $570,806 carryover loss from his law practice. The IRS disallowed both losses. In 2022, the IRS notified Shaut of a deficiency of $38,149 for the 2019 tax year. Shaut then submitted an amended filing, along with a letter from his accountant. In this filing, Shaut claimed deductions for a $720,000 theft loss for his investments in Downing and a $570,806 carryover loss, now from Carbon Vision. His accountant's letter stated that Shaut incurred approximately $600,000 in legal expenses to defend his Downing investments, but these expenses were not included on Shaut's return.

Shaut timely petitioned the Tax Court on July 19, 2022. Prior to trial, the IRS conceded that its original deficiency determination was incorrect. In April 2024, the tax court held a two-day trial limited to whether Shaut could claim certain deductions. During trial, the court initially admitted for impeachment purposes the government's proffered exhibit of an arbitration opinion that established a $2.5 million judgment against Shaut. But the court ultimately excluded the evidence as improper and stated that it did not consider any testimony related to it. Following trial, the tax court concluded that Shaut failed to provide sufficient evidence to claim deductions for ordinary and necessary business expenses, theft or casualty loss, and net operating loss carryover. After the parties submitted computations for the entry of decision, the tax court issued an order and decision determining that Shaut owed $3,548 for the 2019 tax year. Shaut timely appealed.

II.

We have jurisdiction to review tax court decisions pursuant to 26 U.S.C. § 7482(a). *See Oquendo v. Comm'r*, 148 F.4th 820, 827 (6th Cir. 2025). We review the tax court's legal conclusions de novo and its factual findings for clear error. *Id.* Under the clear error standard, we

defer to the tax court's factual findings and the inferences drawn from those findings. *Indmar Prods. Co. v. Comm'r*, 444 F.3d 771, 777 (6th Cir. 2006). "Moreover, we afford even greater discretion to any credibility determinations made by the [t]ax [c]ourt." *Id.* at 778.

Shaut argues that the tax court erred by disallowing his deductions of business expenses for legal fees, theft loss for investments in Downing, and net operating loss carryover. He also contends that the tax court abused its discretion by admitting and considering inadmissible hearsay. We address each argument in turn.

III.

We first consider whether Shaut was entitled to claim certain deductions for the 2019 tax year. We generally presume IRS deficiency determinations are accurate. *See Indmar Prods. Co.*, 444 F.3d at 776. Accordingly, a taxpayer bears the burden of clearly showing a right to a claimed deduction. *McGowan v. United States*, 143 F.4th 686, 701 (6th Cir. 2025) (quoting *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992)). But if a taxpayer introduces credible evidence as to any factual issue relevant to the claimed deduction, the burden of proof shifts to the government. *See id.* at 696.

The tax court may disregard self-serving testimony that lacks credibility or is "improbable, unreasonable[,] or questionable." *Conti v. Comm'r*, 39 F.3d 658, 664 (6th Cir. 1994) (quotation omitted); *see also Davis v. Comm'r*, 866 F.2d 852, 859 (6th Cir. 1989). Shaut claims deductions for ordinary and necessary business expenses under 26 U.S.C. § 162 for legal fees; theft loss under § 165 for his investments in Downing; and net operating loss carryover under § 172 for previously unused losses.

For the following reasons, we affirm the tax court's determination that Shaut was not entitled to any of these claimed deductions.

A.

First, Shaut argues that the tax court erred in its determination that he could not deduct legal expenses related to the Downing litigation as necessary and ordinary business expenses under 26 U.S.C. § 162(a). Section 162 permits a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162(a). To deduct an expense under § 162(a), there must be a trade or business. *Dargie v. United States*, 742 F.3d 243, 245 (6th Cir. 2014). And the claimed expense must be (1) "ordinary;" (2) "necessary;" (3) "paid or incurred by the taxpayer in the taxable year;" and (4) "arise in connection with or proximately result from that trade or business." *Id.* (quotation omitted).

Whether a trade or business exists "requires an examination of the facts in each case." *Comm'r v. Groetzinger*, 480 U.S. 23, 36 (1987) (quoting *Higgins v. Comm'r*, 312 U.S. 212, 217 (1941)). "[A] shareholder ordinarily may not deduct expenses he has incurred on behalf of a corporation. 'When the only return is that of an investor, the taxpayer has not satisfied his burden of demonstrating that he is engaged in a trade or business.'" *Dietrick v. Comm'r*, 881 F.2d 336, 338–39 (6th Cir. 1989) (quoting *Whipple v. Comm'r*, 373 U.S. 193, 202 (1963)). When a taxpayer is an investor and a business-owner, he must take care to distinguish between losses arising from his investments, which are not deductible, and those arising from his business, which are deductible. *Whipple*, 373 U.S. at 202.

Shaut failed to meet his burden to establish his right to claim a business expense deduction for his legal expenses. For starters, the tax court found that Shaut's legal invoices pertained to years other than 2019. The record supports this conclusion: most legal fees Shaut claimed were incurred or paid prior to the 2019 tax year. Accordingly, Shaut has not demonstrated that most claimed expenses were "paid or incurred . . . in the taxable year." *See Dargie*, 742 F.3d at 245

(quotation omitted). And to the extent that these deductions could be carried over to 2019 from previous years, Shaut did not introduce evidence to prove which, if any, expenses were carried over.

As for Shaut's 2019 legal expenses, we cannot say that the tax court clearly erred in finding that his legal fees were not paid or incurred to carry on a trade or business. *See* 26 U.S.C. § 162(a). Shaut claims the legal fees arose in defense of his "investment and work with Downing for the . . . medical patent." (Appellant Br. 22.) Although Shaut was employed by Downing for a time, by early 2015 he was not involved in the day-to-day operations of the partnership and did not receive a salary. By the time litigation around Downing arose, Shaut's role was limited to that of an investor. He therefore cannot claim his legal fees—whether made in his own defense or to protect his interest in Downing's patent-pending technology—were incurred to carry out Downing's operations. *See Whipple*, 373 U.S. at 202 ("[I]nvesting is not a trade or business and the return to the taxpayer, though substantially the product of his services, legally arises not from his own trade or business but from that of the corporation.").

Because the record supports the tax court's conclusions, there is no clear error, and Shaut was not entitled to deduct these expenses under the business expense deduction.

B.

Next, Shaut argues that the tax court erred in finding both that he did not establish the elements of theft for his alleged $720,000 investment in Downing and that the loss was not deductible in the 2019 tax year. A taxpayer may deduct losses—not compensated for by insurance or otherwise—in the taxable year the loss is sustained. 26 U.S.C. § 165(a). This includes losses from theft. *Id.* § 165(c)(3). To deduct a theft loss, a taxpayer must prove the existence of theft,

the amount of the loss, and the year in which the loss was discovered. *Id.* § 165(e); 26 C.F.R. § 1.165-8(a); *see also Alioto v. Comm'r*, 699 F.3d 948, 955 (6th Cir. 2012).

Shaut's claimed deduction fails on multiple accounts. First, the tax court looks to the criminal law of the jurisdiction where the loss took place to determine whether a theft has occurred. *Alioto*, 699 F.3d at 955. Shaut does not dispute that Ohio law governs, which prohibits a person from knowingly obtaining or exerting control over a person's property "with purpose to deprive the owner of property" without the owner's consent, outside the scope of the owner's express or implied consent, or by deception, threat, or intimidation. Ohio Rev. Code § 2913.02(A). To be guilty of theft by deception, a wrongdoer must deceptively act to obtain the owner's property, and as a result, the owner must transfer the property to the wrongdoer. *Ohio v. Edmondson*, 750 N.E.2d 587, 592 (Ohio 2001).

There is no evidence on this record that Downing's principals intentionally coerced Shaut to invest to steal his funds or that Shaut provided funding based on any deception, threat, or intimidation. Although Shaut spoke with Wagner before joining the partnership and Wagner was eventually convicted of wire and securities fraud, the tax court concluded that Shaut's self-serving testimony was insufficient to meet his burden of demonstrating that he in particular was a victim of theft. The court found that it was implausible that Shaut was unaware of the scheme at Downing because he was a sophisticated businessman and investor who had significant involvement in the partnership and, to the extent that he was unaware of the scheme, he failed to demonstrate that his investments were more than bad business decisions.

The record supports this conclusion. As noted above, Shaut had previously founded two businesses, one of which he sold to a Fortune 200 company. He also served as Downing's president and later in a managing director-type role. In these roles, he raised millions of dollars

for the partnership. Accordingly, the tax court did not credit his testimony that he was deceived by Downing's principals. Given the record and our deference to the tax court's credibility determinations, we do not find that the tax court clearly erred. *See Indmar Prods. Co.*, 444 F.3d at 777–78.

Further, Shaut failed to demonstrate that the loss was claimable in 2019. If, in the year the loss was discovered, there exists a reasonable prospect of recovery, no portion of the loss may be deducted, except in "the taxable year in which it can be ascertained with reasonable certainty whether or not such reimbursement will be received." 26 C.F.R. §§ 1.165-1(d)(3), 1.165-8(a)(2). Whether or not a reasonable prospect of recovery exists is a question of fact determined by the totality of the circumstances. *Id.* § 1.165-1(d)(2)(i).

Shaut failed to introduce objective evidence that he discovered the loss in 2019, or alternatively, that a reasonable prospect of recovery existed at the time of his discovery of the loss and continued until the prospect was lost in 2019. Shaut asserts that "after CliniFlow was discovered by Petitioner, there was no reasonable likelihood of recovery." (Appellant Br. 24.) He stated below that this discovery occurred between late 2017 and early 2018. Thus, the tax court did not clearly err in finding that Shaut objectively discovered the theft loss before 2019.

Shaut now claims that a reasonable prospect of recovery existed at the time of discovery and ended in 2019. But he did not explain to the tax court why the prospect of recovery ended at that date, and consequently, he cannot raise this argument now. *Roth Steel Tube Co. v. Comm'r*, 800 F.2d 625, 632 (6th Cir. 1986).

Because the tax court did not clearly err in its factual findings, Shaut is not entitled to a theft loss deduction.

C.

Shaut further argues that he was entitled to claim a net operating loss carryover of $570,806 from the 2018 tax year on his 2019 return. When a taxpayer's deductions exceed his gross income in a given year, the taxpayer has a net operating loss. 26 U.S.C. § 172(c). Relevant here, a taxpayer may carry his net operating loss forward to future tax years. *Id.* § 172(b)(2); *see United Dominion Indus., Inc. v. United States*, 532 U.S. 822, 835 (2001). To carry forward the loss, a taxpayer must establish the existence of the net operating loss and the amount that may be carried over to the relevant tax year. 26 C.F.R. § 1.172-4(a)(1)(i), (b)(2). When determining whether a taxpayer has met his burden to qualify for a carryover deduction, the tax court is not required to view tax returns as conclusive absent additional evidentiary support. *Wilkinson v. Comm'r*, 71 T.C. 633, 639 (1979); *see also Sparkman v. Comm'r*, 509 F.3d 1149, 1156–57 (9th Cir. 2009).

Shaut failed to prove both his right to a carryover deduction and the amount of the deduction. *See Simpson v. Comm'r*, 23 F. App'x 425, 427–28 (6th Cir. 2001) (per curiam). Shaut asserts on appeal that his total claimed carryover loss of $570,806 is comprised of $74,000 from Carbon Vision losses, $109,000 from "a carryover of . . . loss from 2017," $124,000 from his law practice, and $260,000 from Downing losses for legal expenses and travel. (Appellant Br. 28–29.) To support these claims, Shaut largely relies on previous tax returns, which are not conclusive. *See Wilkinson*, 71 T.C. at 639.

Regarding the claimed $74,000 Carbon Vision loss, Shaut appears to have claimed a $74,013 loss on his 2018 tax return. But he offers no additional evidence to support this claimed loss. Shaut produced Carbon Vision's 2013 and 2014 tax returns, but he failed to provide his own returns for those years. Therefore, we cannot determine what Carbon Vision losses remained after 2014 and how those losses translate to Shaut's own net operating losses.

Shaut's additional claimed carryovers likewise lack evidentiary support. Regarding the claimed $109,000 carryover loss from 2017, Shaut's 2018 tax return claimed a $109,547 carryover loss from 2017. But his 2017 return listed a remaining carryover balance of only $105,797. Even if his tax returns were conclusive evidence of loss, these returns would not explain his claimed deduction in 2019.

Similarly, Shaut's $124,000 claimed carryover loss "from starting up" his law practice was not clearly stated on his 2018 tax return and is not supported by the evidence. (Appellant Br. 29.) And although Shaut's 2018 tax return supports a claim of $245,000 for legal and professional services related to Downing, Shaut does not identify which legal bills in evidence support a claim of that amount. In any case, Shaut cannot deduct legal fees from the Downing litigation as business expenses. Without additional evidence supporting the claimed amounts, we cannot say the tax court clearly erred in finding that Shaut failed to meet his burden to substantiate his claimed carryover loss. *See Simpson*, 23 F. App'x at 427–28.

IV.

We next consider whether the tax court erred by admitting an exhibit of the arbitration opinion finding Shaut liable for his involvement in Downing. We review a court's evidentiary rulings for abuse of discretion and reverse only if left with a "definite and firm conviction that the [] court committed a clear error of judgment in the conclusion it reached." *Craddock v. FedEx Corp. Servs. Inc.*, 102 F.4th 832, 841 (6th Cir. 2024) (quotation omitted). Even if a court admits improper evidence, we may nonetheless affirm its ruling if the error was harmless. *See Barnes v.*

*City of Cincinnati*, 401 F.3d 729, 742 (6th Cir. 2005). When sufficient evidence otherwise supports the court's opinion, the error is harmless. *Id.* at 742–43.

Here, the court initially admitted the exhibit for impeachment purposes. But it subsequently concluded that the evidence was introduced late and contained hearsay statements. The parties agree that the evidence should have been excluded. The tax court also agreed; it later excluded the evidence and stated that it did not consider testimony related to the exhibit. Although Shaut speculates that the excluded evidence influenced the tax court's determination of whether he was entitled to a theft loss deduction, as explained, other evidence substantially supports the court's finding. *See supra* Section III.B. Even if the tax court erred by initially admitting the exhibit, any error was therefore harmless. *See Barnes*, 401 F.3d at 742.

V.

For these reasons, we affirm the decision of the tax court.